2023 PA Super 222

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ADRIAN ISIAH VILLANUEVA-PABON | : | |
| | : | |
| Appellant | : | No. 756 EDA 2022 |

Appeal from the Judgment of Sentence Entered September 14, 2021
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0003033-2020

BEFORE: PANELLA, P.J., STABILE, J., and KING, J.

OPINION BY KING, J.: **FILED OCTOBER 31, 2023**

Appellant, Adrian Isiah Villanueva-Pabon, appeals from the judgment of sentence entered in the Lehigh County Court of Common Pleas, following his guilty plea to rape of a child.[1] We affirm.

The relevant facts and procedural history of this case are as follows. On June 29, 2021, Appellant pled guilty to rape of a child after Appellant had sexual intercourse and impregnated his step-sister in 2019. On September 9, 2021, Appellant filed a pre-sentence motion to bar the registration requirements under Revised Subchapter H of the Sexual Offender Registration and Notification Act ("SORNA II")[2] and to stay proceedings in this case pending

---

[1] 18 Pa.C.S.A. § 3121(c).

[2] Following ***Commonwealth v. Muniz***, 640 Pa. 699, 164 A.3d 1189 (2017) (plurality), *cert. denied*, 583 U.S. 1107, 138 S.Ct. 925, 200 L.Ed.2d 213
*(Footnote Continued Next Page)*

the remand decision in **Commonwealth v. Torsilieri**, 659 Pa. 359, 232 A.3d 567 (2020).[3] The court denied Appellant's motion on September 14, 2021. That day, the court sentenced Appellant to 108 to 240 months' imprisonment, plus three years' probation. The court imposed lifetime registration requirements under Revised Subchapter H.[4] Appellant was not designated a sexually violent predator ("SVP").

Appellant timely filed a post-sentence motion on September 22, 2021. Appellant again sought to stay proceedings in this case pending the remand

_____

(2018) and **Commonwealth v. Butler**, 173 A.3d 1212 (Pa.Super. 2017) ("**Butler I**"), *rev'd*, 657 Pa. 579, 226 A.3d 972 (2020) ("**Butler II**"), the Pennsylvania General Assembly enacted legislation to amend SORNA I. **See** Act of Feb. 21, 2018, P.L. 27, No. 10 ("Act 10"). Act 10 amended several provisions of SORNA I and added several new sections found at 42 Pa.C.S.A. §§ 9799.42, 9799.51-9799.75. In addition, the Governor of Pennsylvania signed new legislation striking the Act 10 amendments and reenacting several SORNA I provisions, effective June 12, 2018. **See** Act of June 12, 2018, P.L. 1952, No. 29 ("Act 29"). Through Act 10, as amended in Act 29 (collectively, SORNA II), the General Assembly split SORNA I's former Subchapter H into a Revised Subchapter H and Subchapter I. Subchapter I addresses sexual offenders who committed an offense on or after April 22, 1996, but before December 20, 2012. **See** 42 Pa.C.S.A. §§ 9799.51-9799.75. Subchapter I contains less stringent reporting requirements than Revised Subchapter H, which applies to offenders who committed an offense on or after December 20, 2012. **See** 42 Pa.C.S.A. §§ 9799.10-9799.42. Based on Appellant's offense date in this case, the applicable registration requirements fall under Revised Subchapter H.

[3] We discuss the Supreme Court's decision in **Torsilieri** at length later in this disposition.

[4] **See** 42 Pa.C.S.A. §§ 9799.14(d)(2) (designating rape under Section 3121 as Tier III offense); 9799.15(a)(3) (providing that individual convicted of Tier III offense shall register for life).

decision in **Torsilieri**. The court granted the motion in part, staying the proceedings until December 15, 2021. On December 15, 2021, the court extended the stay until February 18, 2022.

On February 18, 2022, the matter proceeded to a hearing. At that time, Appellant sought to introduce the following evidence: (1) an affidavit from Professor Elizabeth J. Letourneau; (2) the expert report of Dr. James J. Prescott; and (3) a declaration of R. Karl Hanson. The Commonwealth objected to the proffered evidence as follows:

> [THE COMMONWEALTH]: Your Honor, [defense counsel] did provide me with a copy today of the affidavits and expert reports that he was seeking to admit today. We are objecting to them being presented to the [c]ourt. They're not authenticated, and they're hearsay.
>
> I don't think on their own they satisfy the defense burden of establishing any entitlement to relief on the motion as far as—so our position would be that if [Appellant] is entitled— can show he's entitled to any substantive relief, it would have to be pursuant to a hearing with experts and show that whatever they have to say also apply in this case. …

(N.T. Hearing, 2/18/22, at 6-7). The parties then discussed how the court would soon lose jurisdiction to decide the post-sentence motion,[5] and it might not have the requisite time in which to review Appellant's proffered evidence and render a decision on the merits in any event. (**Id.** at 7). The court then suggested that Appellant could file a separate petition to bar application of the

---

[5] **See** Pa.R.Crim.P. 720(B)(3) (providing time frame in which court must decide post-sentence motions).

- 3 -

registration requirements, at which time the court would hold another hearing, "if [Appellant feels] that…is an alternative to simply appealing the post-sentence motion…." (*Id.* at 10). Defense counsel stated his hope that if he appealed, this Court would remand for a full evidentiary hearing. (*Id.* at 10-11).

The following exchange then took place:

> [THE COURT]: So at this point I can simply—you can submit whatever you would like. I essentially am going to deny it based upon the objection of the Commonwealth. You can file an appeal to the Superior Court, which will then, I guess, remand it.
>
> **But at the same time, it would seem to me that if I deny it based upon the fact that the evidence you wanted to present is hearsay, I would hate for you not to have the opportunity to argue this on the merits or wind up waiving the issue or the appellate court say, well, maybe you had a good issue, but the objection of the Commonwealth is a valid objection.**
>
> **You see what I'm thinking? That the appellate courts may say, yes, you had a hearing, but the [c]ourt ruled that the evidence you presented did not satisfy them because it was not admissible.**
>
> I don't mean to put you into a predicament. I want to give you the full opportunity to litigate this, as you will eventually be litigating [other similar cases] or waiting for a decision. You're in a procedural posture in [other cases] to await the *Torsilieri* decision.
>
> [DEFENSE COUNSEL]: Right. So I think as far as today is concerned, I would proceed with just if the [c]ourt would deny the post-sentence motion, and if there's something outside the PCRA I—if it's a PCRA or it's outside the criminal, I'm not sure what—
>
> [THE COURT]: There's a particular petition. There's a

particular series of cases that permit you to proceed outside the PCRA. Again, I can find it quickly. I just didn't think that that's where we were headed today.[6] …

[THE COMMONWEALTH]: Your Honor, just to follow up on one thing that the [c]ourt had said, **I just would like it to be clear on the record we have not objected to the defense having a hearing on this matter. The defense has taken the position all along that their strategic preference was to stay this and hope that *Torsilieri* would resolve the issue**.

(**Id.** at 11-13) (emphasis added). Subsequently, the court sustained the Commonwealth's objection and denied the post-sentence motion. (**Id.** at 14-16).

Appellant timely filed a notice of appeal on March 16, 2022. On March 17, 2022, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely filed his Rule 1925(b) statement on April 5, 2022.

Appellant raises the following issues for our review:

> 1. WHETHER THAT PORTION OF THE SENTENCE IMPOSING SORNA REGISTRATION REQUIREMENTS SHOULD BE VACATED BECAUSE SORNA (REVISED SUBCHAPTER H) VIOLATES BOTH THE PENNSYLVANIA AND FEDERAL CONSTITUTION IN THE FOLLOWING WAYS:
>
>> A. WHETHER SORNA (REVISED SUBCHAPTER H) DENIES APPELLANT DUE PROCESS UNDER THE PENNSYLVANIA CONSTITUTUION BECAUSE IT CREATES AN IRREBUTTABLE PRESUMPTION THAT THOSE CONVICTED

---

[6] The court was referencing **Commonwealth v. Lacombe**, 660 Pa. 568, 594, 234 A.3d 602, 617 (2020) (stating our Supreme Court "has not yet required that sexual offender registration statutes be challenged through the PCRA or some other procedural mechanism") and its progeny.

OF ENUMERATED OFFENSES "POSE A HIGH RISK OF COMMITTING ADDITIONAL SEXUAL OFFENSES" DEPRIVING THOSE INDIVIDUALS OF THEIR FUNDAMENTAL RIGHT TO REPUTATION WITHOUT NOTICE AND AN OPPORTUNITY TO BE HEARD?

B. WHETHER SORNA (REVISED SUBCHAPTER H) DENIES APPELLANT PROCEDURAL DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION BECAUSE IT UNLAWFULLY RESTRICTS LIBERTY AND PRIVACY WITHOUT NOTICE AND AN OPPORTUNITY TO BE HEARD?

C. WHETHER SORNA (REVISED SUBCHAPTER H) VIOLATES SUBSTANTIVE DUE PROCESS UNDER THE STATE AND FEDERAL CONSTITUTIONS, U.S. CONST. AMEND. XIV; PA. CONST. ART I, § 1, BECAUSE SORNA DEPRIVES INDIVIDUALS OF INALIENABLE RIGHTS AND FAILS TO SATISFY STRICT SCRUTINY?

D. WHETHER THE RECENT AMENDMENT TO SORNA, REVISED SUBCHAPTER H, IS IN ALL MATERIAL RESPECTS IDENTICAL TO SORNA AND THEREFORE A PUNITIVE LAW?

E. DOES SORNA (REVISED SUBCHAPTER H), AS A PENAL LAW, VIOLATE THE SEPARATION OF POWERS DOCTRINE BECAUSE IT USURPS THE EXCLUSIVE JUDICIAL FUNCTION OF IMPOSING A SENTENCE?

F. WHETHER SORNA (REVISED SUBCHAPTER H) CONTRAVENES THE 5TH, 6TH AND 14TH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND THE CORRESPONDING PROTECTIONS OF THE PENNSYLVANIA CONSTITUTION BECAUSE AS A CRIMINAL PUNISHMENT, SORNA CANNOT BE IMPOSED WITHOUT DUE PROCESS, NOTICE AND OPPORTUNITY TO CONTEST ITS IMPOSITION, AND ENSURING THAT EACH FACT NECESSARY TO SUPPORT THE MANDATORY SENTENCE AND A SENTENCE BEYOND THE AUTHORIZED STATUTORY MAXIMUM IS SUBMITTED TO A JURY AND PROVEN BEYOND A REASONABLE DOUBT PURSUANT TO ***APPRENDI V. NEW JERSEY***, 530 U.S. 466 (2000) AND

***ALLEYNE V. UNITED STATES***, 1570 U.S. 99 (2013)?

G. WHETHER THE IMPOSITION OF LIFETIME SEX OFFENDER REGISTRATION FOR ALL TIER III OFFENSES UNDER SORNA, REVISED SUBCHAPTER H IS A CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 13 OF THE PENNSYLVANIA CONSTITUTION?

H. WHETHER APPELLANT'S SENTENCE OF LIFETIME REGISTRATION PURSUANT TO SORNA, REVISED SUBCHAPTER H, IS ILLEGAL AS IT IS NOT A SENTENCING ALTERNATIVE AUTHORIZED BY SECTION 9721 OF THE JUDICIAL CODE AND THE TRIAL COURT THEREFORE LACKED AUTHORITY TO IMPOSE SUCH A SENTENCE?

I. WHETHER APPELLANT'S SENTENCE OF LIFETIME REGISTRATION PURSUANT TO SORNA IS ILLEGAL AS THE STATUTORY MAXIMUM FOR A CONVICTION FOR RAPE OF A CHILD OF 40 YEARS?

2. WHETHER THIS MATTER SHOULD BE STAYED, OR REMANDED TO THE TRIAL COURT WITH INSTRUCTIONS TO STAY PROCEEDINGS, PENDING A RESOLUTION OF THE ISSUES RAISED IN [***TORSILIERI***, ***SUPRA***]?

(Appellant's Brief at 5-7) (capitalization in original).

In his issues combined, Appellant argues Revised Subchapter H is unconstitutional because it (a) creates an irrebuttable presumption of dangerousness in violation of the right to reputation protected by the Pennsylvania Constitution; (b) increases punishment based on facts found by the legislature as opposed to a jury in violation of ***Apprendi*** and ***Alleyne***; (c) creates an illegal sentence by requiring registration for a period in excess of the maximum term of incarceration; (d) is excessive under the U.S. and

Pennsylvania Constitutions; and (e) violates separation of powers principles.[7]

For these reasons, Appellant concludes this Court must vacate his registration

requirements, or stay this matter pending resolution of the issues raised in

***Torsilieri***. We disagree.

To begin:

> When an appellant challenges the constitutionality of a statute, the appellant presents this Court with a question of law. ***See Commonwealth v. Atwell***, 785 A.2d 123, 125 (Pa.Super. 2001) (citation omitted). Our consideration of questions of law is plenary. ***See*** [***id.***] (citation omitted). A statute is presumed to be constitutional and will not be declared unconstitutional unless it clearly, palpably, and plainly violates the constitution. ***See Commonwealth v. Etheredge***, 794 A.2d 391, 396 (Pa.Super. 2002) (citations omitted). Thus, the party challenging the constitutionality of a statute has a heavy burden of persuasion. ***See*** [***id.***] (citation omitted).

***Commonwealth v. Howe***, 842 A.2d 436, 441 (Pa.Super. 2004).

In ***Torsilieri***, the Commonwealth appealed from the order entered in

the Chester County Court of Common Pleas declaring Subchapter H of SORNA

II unconstitutional as violative of several provisions of the United States and

Pennsylvania Constitutions. Specifically, the trial court found that Subchapter

H violated due process through the use of an irrebuttable presumption; that

Revised Subchapter H's notification and registration requirements were

punitive in nature; and that Revised Subchapter H violated the requirements

---

[7] We note that these were the same arguments the appellee advanced in ***Torsilieri***. Based on our disposition, we will not elaborate on each of Appellant's individual arguments.

of **Apprendi** and **Alleyne**, imposed sentences in excess of the statutory maximum, constituted cruel and unusual punishment, and violated the separation of powers doctrines by preventing trial courts from imposing an individualized sentence. **Torsilieri, supra** at 383, 232 A.3d at 582.

Based on the evidence relied upon by the trial court,[8] our Supreme Court decided that the appellee had posed colorable constitutional challenges to Revised Subchapter H's registration and notification provisions based on his asserted refutation of two legislative determinations: "(1) that all sexual offenders pose a high risk of recidivation and (2) that the tier-based registration system of Revised Subchapter H protects the public from the alleged danger of recidivist sexual offenders." **Id.** at 387, 232 A.3d at 584.

In considering these claims, the Court stated it was "unable to conclude based upon the record currently before [it] whether [the a]ppellee has sufficiently undermined the validity of the legislative findings supporting Revised Subchapter H's registration and notification provisions, especially in light of the contradictory scientific evidence cited by the Commonwealth during this appeal which may refute [the a]ppellee's experts." **Id.** at 388,

---

[8] The appellee had introduced affidavits and supporting documents of three experts concluding that sex offenders generally have low recidivism rates and questioning the effectiveness of sex offender registration systems. The Commonwealth stipulated to the content of the exhibits offered by the appellee but not their validity or relevance.

232 A.3d at 585.[9]  The Court went on to state that "[i]t is not the role of an appellate court to determine the validity of the referenced studies based on mere citations rather than allowing the opportunity for the truths to develop through a hearing on the merits of the evidence.  Accordingly, a remand is appropriate to allow the parties to address whether a consensus has developed to call into question the relevant legislative policy decisions impacting offenders' constitutional rights."  *Id.* at 388, 232 A.3d at 585 (internal footnote omitted).

In framing the remand, the Court then discussed the extent to which each of the trial court's conclusions of unconstitutionality rested on its crediting of the appellee's scientific evidence.  The Court noted that the trial court's analysis of each of the three prongs of the irrebuttable presumption doctrine relied heavily upon the scientific evidence presented by the appellee. *Id.* at 392, 232 A.3d at 587.  Thus, the Court concluded that remand was necessary "to allow the parties to present additional argument and evidence to address whether a scientific consensus has developed to overturn the legislative determinations in regard to adult sexual offenders' recidivation rates and the effectiveness of a tier-based registration and notification system as they relate to the prongs of the irrebuttable presumption doctrine." *Id.* at

---

[9] Specifically, the Commonwealth emphasized on appeal a conflict among social scientists regarding the recidivism rates of sexual offenders and introduced a then-recent study refuting the appellee's experts' conclusions. *See id.* at 384-85, 232 A.3d at 583.

392, 232 A.3d at 587-88.

Regarding challenges based upon the trial court's conclusion that Revised Subchapter H's registration and notification provisions are punitive, the Court again "evaluate[d] the degree to which the trial court's conclusions [were] based upon the scientific evidence presented by [the a]ppellee." *Id.* at 393, 232 A.3d at 588. The Court discussed the ***Mendoza-Martinez*** factors[10] relevant to whether the effect of a statute is punitive (factors 3 and 5 were not relevant to the analysis), and noted that even where the trial court's analysis of the relevant factors did not "overtly rely on [the a]ppellee's scientific evidence[,]…in balancing all of the factors, the court may have weighed [factor 1] more heavily as punitive because of the court's acceptance of [the a]ppellee's expert evidence." *Id.* at 396, 232 A.3d at 590. Thus, the Court said it was "appropriate for the trial court to reevaluate factor 1 after a full hearing on the scientific evidence." *Id.* *See also id.* at 397-98, 232 A.3d at 591 (recognizing that similar to factor 1, the trial court's analysis of factor

_____

[10] ***Kennedy v. Mendoza-Martinez***, 372 U.S. 144, 168-69, 83 S.Ct. 554, 567-68, 9 L.Ed.2d 644 (1963) (delineating seven-factor test as framework for determining whether statute is so punitive as to negate legislature's intention to identify scheme as civil or regulatory: "[w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment— retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry…") (internal footnotes omitted).

- 11 -

2 did not specifically draw upon the scientific evidence presented by appellee; nevertheless, "we conclude that consideration of the scientific evidence presented on remand may alter the trial court's weighing of this factor"); *id.* at 399, 232 A.3d at 592 (regarding factor 4, concluding "that the court's analysis of this factor also favors remanding for further consideration in light of any additional scientific evidence"); *id.* at 401, 232 A.3d at 593 (noting that "it cannot be disputed that the trial court's evaluation of the [a]ppellee's experts' evidence affected its view of the case. Indeed, it expressly references its evaluation of [factor 6] in its consideration of Factor 7. Thus, the trial court's analysis of this factor also counsels in favor of a remand to develop the record"); *id.* at 402, 232 A.3d at 593 (acknowledging that trial court's evaluation of factor 7 was also tied to strength of appellee's scientific evidence, which may require reevaluation following presentation of any additional scientific evidence on remand). Thus, the Court concluded that the trial court's "labeling of Revised Subchapter H as punitive was impacted by its assessment of [the a]ppellee's expert evidence such that reevaluation of the balancing of the seven *Mendoza-Martinez* factors is appropriate following presentation of additional scientific evidence on remand." *Id.* at 403, 232 A.3d at 594.

As "[t]he trial court's conclusion that Revised Subchapter H is punitive inevitably resulted in the court's determination that the registration requirements were part of [the a]ppellee's criminal sentence, and thus,

subject to the various constitutional and statutory protections[,]" the Court held that the trial court's other holdings that Revised Subchapter H violated ***Apprendi***/***Alleyne***, constituted an illegal sentence, violated constitutional provisions related to cruel and unusual punishment, and violated the separation of powers doctrines, all which flowed from the court's determination that Revised Subchapter H is punitive, similarly must be reevaluated following remand.[11] ***Id.***

Our review of the Court's analysis in ***Torsilieri*** makes clear the importance of the scientific evidence as it pertained to each of the constitutional issues raised by the appellee. In fact, the Court emphasized in its conclusion "that all cases are evaluated on the record created in the individual case." ***Id.*** at 405, 232 A.3d at 595-96. Thus, the Court declined to address **any** of the constitutional issues raised by the appellee, in the absence of a full evidentiary hearing to resolve those claims.

Since ***Torsilieri***, this Court has remanded for a full evidentiary hearing to resolve similar constitutional claims, where the parties did not have an opportunity for a hearing before the trial court. ***See, e.g., Commonwealth v. Mickley***, 240 A.3d 957 (Pa.Super. 2020) (vacating order denying motion

---

[11] Upon remand, the trial court conducted an evidentiary hearing. On August 23, 2022, the trial court again concluded that Revised Subchapter H was unconstitutional. The Commonwealth timely appealed to the Supreme Court, where the case is now pending. The Supreme Court held argument on May 23, 2023, and a decision has yet to be filed. ***See*** 97 MAP 2022.

to bar registration requirements and remanding for evidentiary hearing where court did not permit defense counsel to offer evidence at hearing, despite defense counsel's attempt to do so); *Commonwealth v. Snyder*, No. 2060 EDA 2019 (Pa.Super. filed Jan 19, 2023) (unpublished memorandum)[12] (addressing, upon remand from Supreme Court, claims identical to those addressed in *Torsilieri*; because appellant had not offered any specific scientific evidence or learned testimony in support of his position, this Court remanded to trial court for evidentiary hearing and opportunity for appellant to supplement his arguments with scientific evidence); *Commonwealth v. Chittester*, Nos. 256 WDA 2020 and 257 WDA 2020 (Pa.Super. filed Jan 4, 2023) (unpublished memorandum) (remanding for appellant to have opportunity to file post-sentence motion *nunc pro tunc* asserting his constitutional challenges to Revised Subchapter H, after which trial court shall hold hearing to provide both parties opportunity to develop arguments and present evidence so that court may then weigh evidence in determining whether appellant has refuted relevant legislative findings supporting challenged registration and notification provisions of Revised Subchapter H); *Commonwealth v. Escabal*, No. 1928 EDA 2021 (Pa.Super. filed Oct. 11, 2022) (unpublished memorandum) (rejecting appellant's claims to extent he maintains we may invalidate Revised Subchapter H as matter of law and

---

[12] *See* Pa.R.A.P. 126(b) (stating we may rely on unpublished decisions of this Court filed after May 1, 2019 for their persuasive value).

without further factual development before trial court; vacating and remanding for further proceedings at which parties can present evidence for and against relevant legislative determinations and challenges at issue).

Instantly, we initially observe that the procedural history in this case is distinguishable from cases like **Mickley, supra**, **Snyder, supra**, **Chittester, supra**, and **Escabal, supra**, where there was no evidentiary hearing in the trial court regarding the respective defendant's constitutional claims. The procedural history in this case is also distinguishable than that of **Torsilieri**, where the Commonwealth stipulated to the content of the appellee's proffered exhibits. Here, however, the court held a hearing on Appellant's post-sentence motion and gave Appellant an opportunity to present evidence in support of his constitutional claims. The Commonwealth objected to admission of Appellant's proffered evidence on the grounds of hearsay and lack of authentication. The court sustained the Commonwealth's objection. Significantly, Appellant makes no argument on appeal concerning the propriety of the court's evidentiary ruling. **See Commonwealth v. Kane**, 10 A.3d 327, 331 (Pa.Super. 2010), *appeal denied*, 612 Pa. 689, 29 A.3d 796 (2011) (explaining that this Court will not act as counsel and will not develop arguments on behalf of appellant). Instead, Appellant asks this Court to declare Revised Subchapter H unconstitutional based on the same arguments advanced in **Torsilieri** as well as Appellant's proffered evidence that was marked but not admitted at the hearing due to the court's ruling sustaining

the Commonwealth's objection.

Although the Commonwealth made clear that it did not oppose an evidentiary hearing or an opportunity for Appellant to present expert witnesses, Appellant made a strategic decision to forego offering live testimony in the hope that the trial court or this Court would stay any decision on the merits pending the outcome of the remand hearing in **Torsilieri**. Nevertheless, in the absence of any meritorious argument that the court abused its discretion in sustaining the Commonwealth's objection to the proffered evidence, we are left with a record that contains no evidence from which we can evaluate the veracity of Appellant's constitutional claims. (**See** Trial Court Opinion, filed 4/18/22, at 7-8) (stating: "This [c]ourt recognizes that the costs of presenting the authors of the affidavits might be cost prohibitive, but other than remanding and putting this case on the proverbial shelf indefinitely, or creating a new exception to the hearsay rule, no alternative exists").

In other words, due to the trial court's ruling sustaining the Commonwealth's objection to Appellant's proffered evidence, Appellant essentially presented **no evidence** to overcome the presumption of Revised Subchapter H's constitutionality. **See Howe, supra**. **See also** (Trial Court Opinion at 8) (stating that in absence of evidence, Appellant has failed to meet "high burden" required); **Commonwealth v. Manzano**, 237 A.3d 1175 (Pa.Super. 2020) (holding appellant failed to satisfy his burden to prove that

Revised Subchapter H provisions applicable to him "clearly, palpably, and plainly" violated constitution where appellant produced no scientific evidence whatsoever to support his claims that underlying legislative policy infringes on appellant's rights; rather, appellant simply relied on trial court's initial decision in *Torsilieri* declaring statute as unconstitutional in attempt to persuade trial court in his case to reach same conclusion); *Commonwealth v. Outterbridge*, No. 1175 MDA 2021 (Pa.Super. filed July 27, 2022) (unpublished memorandum) (explaining that appellant raised his Subchapter H claims implicating irrebuttable presumption argument and *Apprendi*/*Alleyne* argument before trial court but he failed to present any evidence of scientific studies to support his claim; likewise, appellant presented no evidence to this Court on appeal; instead, appellant asks us to resolve his Subchapter H claim as matter of law; however, without any scientific studies, appellant cannot make colorable argument that General Assembly's factual presumptions have been undermined by recent scientific studies; therefore, appellant has failed to satisfy his burden to prove that Revised Subchapter H provisions applicable to him, clearly, palpably, and plainly violate constitution; concluding appellant is not entitled to relief and affirming).[13] Accordingly, we affirm.

_____

[13] We observe that Appellant will not be required to comply with the registration requirements until he is released from prison, which will not be until approximately 2030. Should the Supreme Court declare Subchapter H

*(Footnote Continued Next Page)*

- 17 -

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/31/2023

---

unconstitutional in the future, Appellant may seek relief at that time under **Lacombe**. **See Commonwealth v. Faison**, 297 A.3d 810 (Pa.Super. 2023) (rejecting appellant's request to stay his Revised Subchapter H registration requirements based on same constitutionality arguments presented in **Torsilieri**; explaining that Revised Subchapter H has not been declared unconstitutional by Pennsylvania Supreme Court, and legislative enhancements are presumed to be constitutional; noting that appellant will not be required to comply with registration requirements until he is released from prison, which will not be for at least 25 years; explaining that appellant may seek relief under **Lacombe** if Supreme Court declares Subchapter H unconstitutional in future).

We recognize that **Lacombe** dealt with registration requirements under Subchapter I, whereas Appellant's reporting requirements arise under Revised Subchapter H. Nevertheless, this Court has applied this aspect of the **Lacombe** decision (relative to the avenue by which challenges to registration requirements can be raised) in cases involving Revised Subchapter H offenders. **See, e.g., Commonwealth v. Ward**, No. 1580 EDA 2020 (Pa.Super. filed Aug. 9, 2021) (unpublished memorandum) (holding that lower court had jurisdiction to review appellant's Revised Subchapter H SORNA challenges outside framework of PCRA under **Lacombe**).

- 18 -