**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| TERRELL MAURICE WILKINSON, JR. | : | |
| Appellant | : | No. 1185 MDA 2023 |

Appeal from the Judgment of Sentence Entered April 25, 2023
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s):  CP-21-CR-0002279-2022

BEFORE:   OLSON, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                          **FILED: MARCH 26, 2024**

Terrell Maurice Wilkinson, Jr. (Appellant), appeals from the judgment of sentence entered following his jury convictions of indecent assault (victim unconscious or unaware) and indecent assault (lack of consent).[1]  We affirm.

The trial court concisely described the incident underlying this appeal:

Appellant and the victim had been friends since elementary school.  On September 27, 2019, Appellant was spending time with the victim at her parents' house while she was home from college visiting.  She fell asleep on one end of a couch while Appellant was on the opposite end, and she woke up to Appellant's hand under her shirt touching and rubbing her nipple….

Trial Court Opinion, 11/8/23, at 1 (footnotes omitted).

---

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. § 3126(a)(1), (4).

A jury convicted Appellant of the above-described charges. On April 25, 2023, for his conviction of indecent assault (victim unconscious or unaware), the trial court sentenced Appellant to 6-23 months in jail, followed by one year of supervised probation.[2] The trial court directed Appellant to comply with the Tier II[3] registration requirements of the Sexual Offender Registration and Notification Act (SORNA), 42 Pa.C.S.A. §§ 9799.14 - 9799.15. The Sexual Offender Assessment Board (SOAB) determined Appellant did not meet the criteria to be deemed a sexually violent predator (SVP).

Appellant filed post-sentence motions challenging the weight and sufficiency of the evidence and seeking bail pending appeal. Appellant further challenged the constitutionality of SORNA's registration and notification provisions under Revised Subchapter H.[4] **See** 42 Pa.C.S.A. § 9791. As

---

[2] Appellant's second conviction of indecent assault merged for sentencing purposes.

[3] Indecent assault under 18 Pa.C.S.A. § 3126(a)(4) is a Tier II offense. **See** 42 Pa.C.S.A. § 9799.14. A conviction of a Tier II offense subjects offenders to a 25-year registration period. **See id.**

[4] SORNA was originally enacted on December 20, 2011, effective December 20, 2012. **See** Act of Dec. 20, 2011, P.L. 446, No. 111, § 12 (Act 11 of 2011). Act 11 was amended on July 5, 2012, also effective December 20, 2012. **See** Act of July 5, 2012, P.L. 880, No. 91 (Act 91 of 2012). That Act was amended on February 21, 2018, effective immediately (Act 10 of 2018). **See** Act of Feb. 21, 2018, P.L. 27, No. 10, §§ 1-20. The Act was further reenacted and amended on June 12, 2018, P.L. 140, No. 29, §§ 1-23, effective June 12, 2018 (Act 29 of 2018). Acts 10 and 29 of 2018 are generally referred to collectively as SORNA II. As our Supreme Court explained in **Commonwealth v. Torsilieri**, 232 A.3d 567 (Pa. 2020),
*(Footnote Continued Next Page)*

summarized by the trial court, Appellant claimed SORNA's registration/notification provisions constituted

> (1) [a] violation of due process via creating an irrebuttable presumption infringing on the right to reputation; (2) [a] violation of the dictates of **Apprendi** [**v. New Jersey**, 530 U.S. 466 (2000),] and **Alleyne** [**v. United States**, 570 U.S. 99 (2013),] via subjecting offenders to "increased registration provisions" without a jury determining the risk of future dangerousness; (3) imposition of an illegal sentence in excess of statutory maximums; (4) [the] imposition of an excessive sentence in violation of the cruel and unusual punishment prohibitions in the state and federal constitutions; and (5) [a] violation of the separation of powers doctrine….

Trial Court Opinion, 11/8/23, at 2; **see also** Appellant's Post-Sentence Motions, 5/1/23, ¶¶ 45-48.

The trial court conducted a post-sentence motion hearing on July 24, 2023, at which Appellant's trial counsel "presented no evidence and made

---

> Act 10 split SORNA, which was previously designated in the Sentencing Code as Subchapter H, into two subchapters. Revised Subchapter H applies to crimes committed on or after December 20, 2012, whereas Subchapter I applies to crimes committed after April 22, 1996, but before December 20, 2012. In essence, Revised Subchapter H retained many of the provisions of SORNA, while Subchapter I imposed arguably less onerous requirements on those who committed offenses prior to December 20, 2012, in an attempt to address this Court's conclusion in [**Commonwealth v.**] **Muniz**[, 164 A.3d 1189 (Pa. 2017),] that application of the original provisions of SORNA to these offenders constituted an *ex post facto* violation.

**Id.** at 580-81. Because Appellant was convicted of offenses committed after December 20, 2012, Subchapter H applies. Incidentally, the **Torsilieri** Court refers to "Subchapter H" as "Revised Subchapter H". **See generally id.**

argument only as to the sentence modification and bail motions, having said that he did not feel he needed to belabor legal argument" for the SORNA issues. Trial Court Opinion, 11/8/23, at 2. Appellant's counsel acknowledged he presented the SORNA claim for issue-preservation purposes only, as the matter was then pending before the Supreme Court in **_Torsilieri_**. **_See_** N.T., 7/24/23, at 4 (wherein Appellant's counsel stated, "The issue that I … raised under [SORNA], is currently before the Supreme Court, again, filed for issue preservation since it's pending.").

On July 25, 2023, the trial court granted bail pending appeal, but denied Appellant's remaining post-sentence motions. Appellant timely appealed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant, represented by new counsel, presents the following issues for our review:

> 1. Whether SORNA's registration and notification provisions violate Pennsylvania's due process provisions and unconstitutionally infringe upon the right of reputation by authorizing an irrebuttable presumption that all sexual offenders pose a high risk of recidivism and that the tier-based registration system protects the public from recidivist sexual offenders?
>
> 2. Whether SORNA's registration and notification periods constitute an illegal sentence in excess of the statutory maximum and is cruel and unusual punishment under the State and federal constitutions?
>
> 3. Whether SORNA's tiered registration and notification system for non-SVP's violates **_Alleyne_** and **_Apprendi_**?
>
> 4. Whether SORNA violates the separation of powers doctrine by encroaching on the fact-finding and sentencing responsibilities of the judiciary?

- 4 -

5. Whether, based on the short-sentence exception, [Appellant] is entitled to a remand and should be permitted to waive [Post Conviction Relief Act (PCRA)[5]] review and present ineffective assistance of counsel claims as part of unitary review?

6. Whether trial counsel was ineffective in failing to adequately cross[-]examine the accuser using all of the text-messages she sent to another male friend during the time period of the alleged incident where the messages were not hearsay because they were not being introduced for the truth of the actual messages?

7. Whether trial counsel was ineffective in failing to adequately cross[-]examine the accuser about her continued relationship with [Appellant] and using text messages that she sent to [Appellant] after the alleged incident to impeach the credibility of the accuser?

Appellant's Brief at 8-9 (issues renumbered, footnote added).

Appellant's first four issues challenge the constitutionality of SORNA's registration/notification requirements as unconstitutional. Because the issues are related, we address them together.

Appellant first challenges the irrebuttable presumption in SORNA's Revised Subchapter H violated his right to due process, as guaranteed under Article I, Section 9 of the Pennsylvania Constitution. *Id.* at 32, 33. Appellant claims that 42 Pa.C.S.A. § 9799.11(a)(4) imposes an irrebuttable presumption that *all* sex offenders have a high risk of recidivism, by requiring registration and notification even where the defendant is *not* deemed an SVP. *Id.*

Appellant further argues that SORNA's imposition of an irrebuttable presumption unconstitutionally infringes on his right of reputation. *Id.* at 32.

_____

[5] 42 Pa.C.S.A. §§ 9541-9546.

Appellant argues, "it is beyond cavil that an individual's reputation is a fundamental right protected by due process of law." *Id.* at 35-36. In support, Appellant relies on our Constitution's prohibition against self-incrimination, claiming it "was originally construed as protecting against disclosure of information that would subject the individual to shame, ignominy, or contempt." *Id.* at 36. Appellant also cites the right of privacy. *Id.* Appellant contends,

> an irrebuttable presumption that one is at high risk of sexually reoffending and must register with the State Police based solely on a misdemeanor conviction for indecent assault, encroaches on the right[s] of reputation and privacy.

*Id.* Moreover, Appellant argues that the presumption "is not universally true." *Id.*

Appellant directs our attention to the dissenting opinion of Supreme Court Justice Christine Donohue in *Torsilieri*. *Id.* at 37-38. Justice Donohue pointed out the risk-assessment tools already employed by the SOAB, and opined that "actuarily derived" assessments are preferrable for determining high-risk and low-risk offenders. *Id.* at 37 (citing *Torsilieri*, 232 A.3d at 607-08 (Donohue, J., dissenting)). Because individualized risk assessments are available to determine an offender's recidivism risk, Appellant asserts that SORNA's irrebuttable presumption is unconstitutional. *Id.* at 38.

In his second issue, Appellant claims that SORNA's registration and notification requirements constitute an illegal sentence in excess of the statutory maximum. Appellant's Brief at 39. Appellant further asserts Revised

Subchapter H's registration/notification requirements are "cruel and unusual punishment under the State and federal constitutions." *Id.* Under SORNA's Revised Subchapter H, Appellant argues, he "is required to register for twenty-five years and verify registration and be photographed at an approved registration site semi-annually." *Id.* at 41. Further, Appellant states that SORNA requires in-person appearances after any change in name, residence, phone number, vehicle ownership, email, or instant messaging designation. *Id.* at 42.

Appellant acknowledges that in *Commonwealth v. Lacombe*, 234 A.3d 602 (Pa. 2020), our Supreme Court rejected an *ex post facto* challenge to SORNA's Subchapter I (not H), and concluded it was not punitive. Appellant's Brief at 42. Appellant further acknowledges that in *Commonwealth v. Butler*, 173 A.3d 1212 (Pa. Super. 2017), this Court concluded that Revised Subchapter H's registration requirements for SVPs did not constitute "punishment." *Id.* at 42-43. Nevertheless, Appellant distinguishes his case based on his status as a **non**-**SVP** offender under Subchapter H. *Id.* at 43. Appellant argues that, applying the analysis articulated by the United States Supreme Court in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963),[6] application of Revised Subchapter H's

---

[6] As noted by our Supreme Court in *Commonwealth v. Santana*, 266 A.3d 528 (Pa. 2021), the United States Supreme Court, in *Mendoza-Martinez*,

*(Footnote Continued Next Page)*

registration/notification requirements to him is punitive. Appellant's Brief at 43-44.

In his third issue, Appellant claims that SORNA's tiered registration and notification system for non-SVPs violates **Alleyne** and **Apprendi**.[7] Appellant's Brief at 51. Appellant argues the registration and notification provisions of SORNA equate to punishment. **Id.** Appellant claims the provisions violate **Alleyne** and **Apprendi**, as they increase the prescribed range of penalties

---

articulated a two-part test for deciding whether a legislative enactment is punitive. The first inquiry asks whether the legislature intended a statutory scheme to be punitive. If so, the inquiry ends. If not, the reviewing court must assess whether the statute nonetheless is punitive in its effect. This second inquiry requires consideration of the following seven factors:

[(1)] whether the sanction involves an affirmative disability or restraint, [(2)] whether it has historically been regarded as a punishment, [(3)] whether it comes into play only on a finding of scienter, [(4)] whether its operation will promote the traditional aims of punishment-retribution and deterrence, [(5)] whether the behavior to which it applies is already a crime, [(6)] whether an alternative purpose to which it may rationally be connected is assignable for it, and [(7)] whether it appears excessive in relation to the alternative purpose assigned.

**Santana**, 266 A.3d at 538 n.46 (original brackets omitted) (citing **Mendoza-Martinez**, 372 U.S. at 168-69).

[7] In **Apprendi**, the United States Supreme Court held that New Jersey's sentencing procedure violated the defendant's Sixth Amendment right to a trial by jury, as well as his due process rights under the Fourteenth Amendment, because any fact that increases the penalty for a crime is an element of the offense. **Apprendi**, 530 U.S. at 483 n.10. In **Alleyne**, the Supreme Court held that the **Apprendi** rule applies to facts that increase a mandatory minimum sentence. **Alleyne**, 570 U.S. at 111 n.1.

and must, therefore, be determined beyond a reasonable doubt by the fact-finder. *Id.* at 51-52.

In his fourth issue, Appellant challenges the constitutionality of SORNA's tiered system. *Id.* at 50. Appellant claims that SORNA's irrebuttable presumption precludes the judiciary "from engaging in individualized assessments of the offender." *Id.* Appellant argues,

> [a]s it relates to Tier II (and Tier III) offenders, SORNA precludes Judges from making a determination as to the likelihood of re-offending and making any independent fact-finding determinations at sentencing that would impact registration and notification. SORNA's removal from judges of the ability to engage in individualized sentencing for registration and notification, based on the unsupported presumption that an offender is at a high risk of re-offending, violates the separation of powers doctrine.

*Id.* at 51.

Where, as here, an appellant challenges the constitutionality of a statute,

> the appellant presents this Court with a question of law. *See Commonwealth v. Atwell*, 785 A.2d 123, 125 (Pa. Super. 2001) (citation omitted). Our consideration of questions of law is plenary. *See* [*id.*] (citation omitted). **A statute is presumed to be constitutional and will not be declared unconstitutional unless it clearly, palpably, and plainly violates the constitution. *See Commonwealth v. Etheredge*, 794 A.2d 391, 396 (Pa. Super. 2002) (citations omitted). Thus, the party challenging the constitutionality of a statute has a heavy burden of persuasion. *See* [*id.*] (citation omitted).

***Commonwealth v. Villanueva-Pabon***, 304 A.3d 1210, 1214 (Pa. Super. 2023) (emphasis added) (quoting ***Commonwealth v. Howe***, 842 A.2d 436, 441 (Pa. Super. 2004)).

"While the General Assembly may enact laws which impinge on constitutional rights to protect the health, safety, and welfare of society, any restriction is subject to judicial review to protect the constitutional rights of all citizens." ***In the Interest of J.B.***, 107 A.3d 1, 14 (Pa. 2014).  We are mindful that "the wisdom of public policy is one for the legislature, and the General Assembly's enactments are entitled to a strong presumption of constitutionality rebuttable only by a demonstration that they clearly, plainly, and palpably violate constitutional requirements." ***Shoul v. Com., Dept. of Transp., Bureau of Driver Licensing***, 173 A.3d 669, 678 (Pa. 2017) (footnote omitted).

Similar to this case, in ***Villanueva-Pabon***, the appellant argued that SORNA's Revised Subchapter H

> is unconstitutional because it (a) creates an irrebuttable presumption of dangerousness in violation of the right to reputation protected by the Pennsylvania Constitution; (b) increases punishment based on facts found by the legislature as opposed to a jury in violation of ***Apprendi*** and ***Alleyne***; (c) creates an illegal sentence by requiring registration for a period in excess of the maximum term of incarceration; (d) is excessive under the U.S. and Pennsylvania Constitutions; and (e) violates separation of powers principles.

***Villanueva-Pabon***, 304 A.3d at 1214.

Summarizing our Supreme Court's holding in **Torsilieri**, as applied to a constitutional challenge to SORNA's registration/notification provisions, this Court explained:

> In **Torsilieri**, the Commonwealth appealed from the order entered [by the trial court] declaring Subchapter H of SORNA II unconstitutional as violative of several provisions of the United States and Pennsylvania Constitutions. Specifically, the trial court found that Subchapter H violated due process through the use of an irrebuttable presumption; that Revised Subchapter H's notification and registration requirements were punitive in nature; and that Revised Subchapter H violated the requirements of **Apprendi** and **Alleyne**, imposed sentences in excess of the statutory maximum, constituted cruel and unusual punishment, and violated the separation of powers doctrines by preventing trial courts from imposing an individualized sentence. **Torsilieri**, ... 232 A.3d at 582.
>
> Based on the evidence relied upon by the trial court,[FN1] our Supreme Court decided that the appellee had posed colorable constitutional challenges to Revised Subchapter H's registration and notification provisions based on his asserted refutation of two legislative determinations: "(1) that all sexual offenders pose a high risk of recidivation and (2) that the tier-based registration system of Revised Subchapter H protects the public from the alleged danger of recidivist sexual offenders." **Id.** at ... 584.
>
> ---
>
> [FN1] The appellee had introduced affidavits and supporting documents of three experts concluding that sex offenders generally have low recidivism rates and questioning the effectiveness of sex offender registration systems. The Commonwealth stipulated to the content of the exhibits offered by the appellee but not their validity or relevance.
>
> ---
>
> In considering these claims, the Court stated it was "unable to conclude based upon the record currently before [it] whether [the a]ppellee has sufficiently undermined the validity of the legislative findings supporting Revised Subchapter H's registration and notification provisions, especially in light of the contradictory scientific evidence cited by the Commonwealth during this appeal

which may refute [the a]ppellee's experts." ***Id.*** at … 585.[FN2]  The Court went on to state that "[i]t is not the role of an appellate court to determine the validity of the referenced studies based on mere citations rather than allowing the opportunity for the truths to develop through a hearing on the merits of the evidence. Accordingly, a remand is appropriate to allow the parties to address whether a consensus has developed to call into question the relevant legislative policy decisions impacting offenders' constitutional rights." ***Id.*** at … 585 (internal footnote omitted).

---

[FN2] Specifically, the Commonwealth emphasized on appeal a conflict among social scientists regarding the recidivism rates of sexual offenders and introduced a then-recent study refuting the appellee's experts' conclusions. ***See id.*** at … 583.

---

In framing the remand, the Court then discussed the extent to which each of the trial court's conclusions of unconstitutionality rested on its crediting of the appellee's scientific evidence.  The Court noted that the trial court's analysis of each of the three prongs of the irrebuttable presumption doctrine relied heavily upon the scientific evidence presented by the appellee.  ***Id.*** at … 587.  Thus, the Court concluded that remand was necessary "to allow the parties to present additional argument and evidence to address whether a scientific consensus has developed to overturn the legislative determinations in regard to adult sexual offenders' recidivation rates and the effectiveness of a tier-based registration and notification system as they relate to the prongs of the irrebuttable presumption doctrine." ***Id.*** at … 587-88.

***Villanueva-Pabon***, 304 A.3d at 1214-16 (footnotes in original).

The Court further recognized that

[s]ince ***Torsilieri***, this Court has remanded for a full evidentiary hearing to resolve similar constitutional claims, **where the parties did not have an opportunity for a hearing before the trial court. *See, e.g., Commonwealth v. Mickley***, 240 A.3d 957 (Pa. Super. 2020) (vacating order denying motion to bar registration requirements and remanding for evidentiary hearing where court did not permit defense counsel to offer evidence at hearing, despite defense counsel's attempt to do so); ***Commonwealth v. Snyder***, 292 A.3d 1106 (Pa. Super. filed

2023) (unpublished memorandum) (addressing, upon remand from Supreme Court, claims identical to those addressed in *Torsilieri*; because appellant had not offered any specific scientific evidence or learned testimony in support of his position, this Court remanded to trial court for evidentiary hearing and opportunity for appellant to supplement his arguments with scientific evidence); *Commonwealth v. Chittester*, 292 A.3d 1069 (Pa. Super. filed 2023) (unpublished memorandum) (remanding for appellant to have opportunity to file post-sentence motion *nunc pro tunc* asserting his constitutional challenges to Revised Subchapter H, after which trial court shall hold hearing to provide both parties opportunity to develop arguments and present evidence so that court may then weigh evidence in determining whether appellant has refuted relevant legislative findings supporting challenged registration and notification provisions of Revised Subchapter H); *Commonwealth v. Escabal*, 287 A.3d 844 (Pa. Super. filed 2022) (unpublished memorandum) (rejecting appellant's claims to extent he maintains we may invalidate Revised Subchapter H as matter of law and without further factual development before trial court; vacating and remanding for further proceedings at which parties can present evidence for and against relevant legislative determinations and challenges at issue).

*Villanueva-Pabon*, 304 A.3d at 1217 (emphasis added).

Under the circumstances presented in *Villanueva-Pabon*, this Court concluded that remand was not warranted. *See id.* at 1218. The appellant in *Villanueva-Pabon* was afforded an evidentiary hearing on his post-sentence motion. *See id.* at 1217. At that hearing, the trial court sustained the Commonwealth's hearsay objection to the appellant's evidence; the appellant did not challenge this evidentiary ruling on appeal. *Id.* at 1218. The appellant instead "ask[e]d this Court to declare Revised Subchapter H unconstitutional based on the same arguments advanced in *Torsilieri*, as well as [the a]ppellant's proffered evidence that was marked but not admitted at

the hearing due to the court's ruling sustaining the Commonwealth's objection." *Id.* Because of the appellant's "strategic decision to forego offering live testimony[,]" the *Villanueva-Pabon* Court was "left with a record that contains no evidence from which we can evaluate the veracity of [the a]ppellant's constitutional claims." *Id.*

> [D]ue to the trial court's ruling sustaining the Commonwealth's objection to [a]ppellant's proffered evidence, **[a]ppellant essentially presented no evidence to overcome the presumption of Revised Subchapter H's constitutionality.** *See Howe*, *supra*. *See also* … *Commonwealth v. Manzano*, 237 A.3d 1175 (Pa. Super. 2020) (holding appellant failed to satisfy his burden to prove that Revised Subchapter H provisions applicable to him "clearly, palpably, and plainly" violated constitution where appellant produced no scientific evidence whatsoever to support his claims that underlying legislative policy infringes on appellant's rights; rather, appellant simply relied on trial court's initial decision in *Torsilieri* declaring statute as unconstitutional in attempt to persuade trial court in his case to reach same conclusion); *Commonwealth v. Outterbridge*, 283 A.3d 403 (Pa. Super. filed 2022) (unpublished memorandum) (explaining that appellant raised his Subchapter H claims implicating irrebuttable presumption argument and *Apprendi*/*Alleyne* argument before trial court but he failed to present any evidence of scientific studies to support his claim; likewise, appellant presented no evidence to this Court on appeal; instead, appellant asks us to resolve his Subchapter H claim as matter of law; however, without any scientific studies, appellant cannot make [a] colorable argument that [the] General Assembly's factual presumptions have been undermined by recent scientific studies; therefore, appellant has failed to satisfy his burden to prove that Revised Subchapter H provisions applicable to him, clearly, palpably, and plainly violate [the] constitution; concluding appellant is not entitled to relief and affirming).

*Villanueva-Pabon*, 304 A.3d at 1218 (emphasis added).

Recently, in *Commonwealth v. Bueno*, 307 A.3d 1255 (Pa. Super. 2024), this Court rejected an appellant's request to resolve a Subchapter H

- 14 -

issue *as a matter of law*, based upon the appellant's designation as a non-

SVP:

> Appellant suggests that we resolve his Subchapter H claims as a matter of law. However, as this Court noted in **Outterbridge**, "**without any evidence of scientific studies, [a]ppellant cannot make 'a colorable argument that the General Assembly's factual presumptions have been undermined by recent scientific studies.**'" **Outterbridge**, 2022 Pa. Super. Unpub. LEXIS 1738, 2022 WL 2965808, at *4 (citation omitted).
>
> Further, to the extent [a]ppellant argues his own case is proof that the irrebuttable presumption on which SORNA's registration requirements depends is false since he was designated as a non-SVP offender, and, thus, he is not likely to engage in predatory sexual violent offenses such that requiring him to register as a sex-offender is unconstitutional, we find no relief is due.
>
> In **Commonwealth v. Wolf**, 276 A.3d 805 (Pa. Super. 2022), this Court addressed a claim similar to the one raised by [a]ppellant and held:
>
>> … In **Torsilieri**, the defendant was also "not designated an SVP" and the Supreme Court still concluded that the defendant did not "demonstrate a consensus of scientific evidence as was present to find a presumption not universally true in [**J.B.**,] nor the 'clearest proof' needed to overturn the General Assembly's statements that the provisions are not punitive." **Torsilieri**, 232 A.3d at 594. Again, in the case at bar, [the a]ppellant invites us to go beyond **Torsilieri's** holding and conclude that the registration statutes are, as a matter of law, unconstitutional on their face. We decline [the a]ppellant's invitation. **Torsilieri** binds this Court and [the a]ppellant's claim fails, as [the appellant's] unsupported challenge does not "demonstrate a consensus of scientific evidence as was present to find a presumption not universally true in **J.B.**, nor the 'clearest proof' needed to overturn the General Assembly's statements that the provisions are not punitive." **See Torsilieri**, 232 A.3d at 594.
>
> **Wolf**, 276 A.3d at 813.

- 15 -

*Bueno*, 307 A.3d at 1262.

In the instant case, Appellant raised his Subchapter H claims before the trial court, but declined to present evidence supporting his constitutional challenge. *See* N.T., 7/24/23, at 4. Because of this strategic choice, Appellant failed to overcome SORNA's presumption of constitutionality. *See Villanueva-Pabon*, 304 A.3d at 1218. As in *Villanueva-Pabon*, *Wolf* and *Bueno*, Appellant failed to advance a colorable argument challenging the General Assembly's factual presumptions, as implemented in SORNA.

Further, Appellant failed to present the clearest proof necessary to overturn the General Assembly's pronouncement that SORNA's provisions are not punitive. *See Shoul*, 173 A.3d at 678; *Torsilieri*, 232 A.3d at 594. As such, Appellant cannot establish that the 25-year registration period, as applied to him, is so disproportionate as to be punitive, thereby implicating *Alleyne* and *Apprendi*. Appellant failed to meet his heavy burden of proving that SORNA's registration and notification requirements, as applied to him, "clearly, palpably, and plainly" violated the constitution." *Torsilieri*, 232 A.2d at 575; *accord Bueno*, 307 A.3d at1263; *Wolf*, 275 A.3d at 813. Appellant's first four issues warrant no relief.

Appellant's remaining issues claim the ineffective assistance of Appellant's trial counsel. In his fifth issue, Appellant argues that review of his ineffectiveness claims should be permitted under the "short-sentence

exception" to the PCRA's timeliness requirement.[8]   Appellant's Brief at 17.

Appellant explains that the short-sentence exception should apply, because

his sentence of less than three years (including his term of probation) is likely

to expire before completion of any PCRA review.  *Id.*  Appellant relies on our

Supreme Court's decision in ***Commonwealth v. Holmes***, 79 A.3d 562 (Pa.

2013), which recognized that unitary review could be appropriate where the

defendant establishes "good cause" or "exceptional circumstances."

Appellant's Brief at 17.   Appellant asserts, "[b]ecause [his] total sentence

(based on time already served) is less than three years, his short sentence

establishes 'good cause' to permit him to waive PCRA review and pursue

unitary review." *Id.* (footnote omitted).  Appellant argues,

> [b]ecause [he] was afforded bail pending appeal, he admittedly is
> not currently serving his sentence and served approximately three
> months of his sentence.  However, a less than three-year period
> (approximately 2 years and nine months) to pursue PCRA relief
> through the trial level, the Superior Court, and the Supreme Court
> is insufficient time to *guarantee* that [Appellant] would still be
> serving his sentence at the conclusion of appellate review.

*Id.* at 20 (emphasis in original).

Without citation, Appellant claims the typical appeal period is

approximately one year from the filing of the notice of appeal.  *Id.*  Appellant's

---

[8] Any PCRA petition, including a second or subsequent petition, shall be filed
within one year of the date the underlying judgment of sentence becomes
final.  42 Pa.C.S.A. § 9545(b)(1).  A judgment of sentence is final "at the
conclusion of direct review, including discretionary review in the Supreme
Court of the United States and the Supreme Court of Pennsylvania, or at the
expiration of time for seeking the review."  42 Pa.C.S.A. § 9545(b)(3).

counsel relies on his own experiences in shepherding cases though the direct appeal and PCRA process. *See id.* at 22-23. Appellant argues,

> it is evident that a sentence that is less than three years is an insufficient period to *realistically guarantee* PCRA review through the entirety of the State appellate process. Since [Appellant's] sentence, when factoring in the almost three month period he has already served, and including his probation period, is less than three years, his sentence is sufficiently short to establish "good cause" to permit him to waive PCRA review. … A sentence of three years or less qualifies as a short sentence.

*Id.* at 23 (emphasis in original).

Appellant requests a remand to allow him "to undergo a PCRA waiver colloquy due to his short sentence." *Id.* at 24. Appellant points out he was represented by trial counsel at the time he filed post-sentence motions, "and counsel generally cannot raise his own ineffectiveness." *Id.* Thus, Appellant asserts, he had no opportunity to waive PCRA review and raise his ineffectiveness claims on direct appeal. *Id.*

In *Holmes*, 79 A.3d 562, the Pennsylvania Supreme Court reaffirmed the general rule which was initially set forth in *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002), that "claims of ineffective assistance of counsel are to be deferred to PCRA review; trial courts should not entertain claims of ineffectiveness upon post-verdict motions; and such claims should not be reviewed upon direct appeal." *Holmes*, 79 A.3d at 576 (footnote omitted). The *Holmes* Court identified two limited exceptions to this general rule: (1) in "an extraordinary case where the trial court, in the exercise of its discretion, determines that a claim (or claims) of ineffectiveness is both

- 18 -

meritorious and apparent from the record so that immediate consideration and relief is warranted[;]" or (2) when the defendant raises "multiple, and indeed comprehensive, ineffectiveness claims[,]" which the court, "in its discretion, and for good cause shown," determines post-verdict review is warranted, and the defendant waives his right to PCRA review. *Id.* at 577-78.

In ***Commonwealth v. Delgros***, 183 A.3d 352 (Pa. 2018), our Supreme Court additionally recognized an exception "where the defendant is statutorily precluded from obtaining subsequent PCRA review[,]" such as when a defendant receives a short sentence or a fine for their crimes. *Id.* at 361. In ***Delgros***, the defendant was sentenced to pay a fine without incarceration or probation. *Id.* at 353.

None of these exceptions apply to Appellant's case. Appellant's claims are not apparent from the record and meritorious. Appellant has not waived his right to PCRA review, and the sentence imposed by the trial court does not statutorily prohibit him from seeking PCRA review. ***See Holmes***, 79 A.3d at 563-64; ***Delgros***, 193 A.3d at 361. As the trial court correctly observed,

> [t]hough Appellant's maximum sentence may be short (2 years and 11 months), the lion's share of Appellant's sentence has yet to be served as he is currently released on bail pending appeal and will not resume serving his sentence until after direct review is complete. … [The trial court] note[s] that [it] held a bail modification hearing on November 8, 2023[,] upon notification from the Probation Department that Appellant was not in compliance with the terms of his bail; [the court] issued an order the same day modifying the non-monetary terms of his bail and Appellant remains un-incarcerated.

Trial Court Opinion, 11/8/23, at 8 n.25. Appellant's sentence is not so short as to preclude him from seeking relief under the PCRA. Consequently, we decline to address Appellant's ineffectiveness claims on direct appeal. Appellant may seek relief through a timely filed PCRA petition.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 03/26/2024